IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AIMEE L. CRESSEND,

        Plaintiff,

v.

SGT. ANDY WAUGH,

        Defendant.

Case No. 2:09-CV-1060
JUDGE SARGUS
MAGISTRATE JUDGE DEAVERS

## OPINION AND ORDER

This matter is before the Court for consideration of the Parties' cross-motions for summary judgment (Docs. 22 and 45). For the reasons set forth herein, Defendant's motion for summary judgment is **GRANTED in PART**, and Plaintiff's motion is **DENIED**.

### I.

Plaintiff Aimee L. Cressend ("Cressend") brings the instant action against Sgt. Andy Waugh ("Waugh") with claims for malicious prosecution under Ohio law and false arrest in violation of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983.

This case arises from Cressend's prosecution for cultivation of marijuana at a home in Pataskala, Ohio. Waugh was involved in the investigation and prosecution of Cressend in his capacity as a member of the Pataskala police force. Specifically, Waugh signed the affidavit in support of the arrest warrant for Cressend. Five other officers listed as "John Does 1 through 5" were originally included as Defendants, but were dismissed from the case on March 28, 2011 pursuant to Rule 4(m). (*See* Doc. 35.)

On January 18, 2008, Bethany Ritchie called the Pataskala Police Department to report a marijuana growing operation located at a residence at 340 Cottage Grove Circle in Pataskala. (*See* Doc. 2-1 at 1.) According to Ritchie, Kenneth Summerville, her ex-boyfriend, had

previously asked her to place the electric bill of that residence in her name. (Doc. 2-1 at 2.) Ritchie claimed that she became suspicious about Summerville's intentions because the monthly bill seemed very large, and that her suspicions were confirmed when she visited the house and discovered marijuana plants growing in the basement under ultraviolet lights. (Doc. 2-1 at 2.) Based on the information provided by Ritchie, officers of the Pataskala Police Department obtained a search warrant for the residence and discovered approximately 160 growing marijuana plants along with cultivation equipment. (*See* Doc. 2-3.)

Summerville and Cressend have had an on-again, off-again relationship dating back to early 2002. (Cressend Dep. at 27–28.) During the search of the residence at 340 Cottage Grove Circle, officers discovered mail addressed to Cressend and other items connecting Cressend to the residence. (Waugh Aff. ¶ 8, Jan. 27, 2011.) According to Waugh, neighbors of the 340 Cottage Grove residence claimed that vehicles registered to Cressend frequently were parked at the residence. (Waugh Aff. ¶ 9, Jan. 27, 2011.) Further, a neighbor identified Cressend herself as an individual who frequented the residence. (Waugh Aff. ¶ 10, Jan. 27, 2011.) Cressend and Summerville also owned a business together, K.S.A.C., Inc., which listed 340 Cottage Grove Circle as its associated address. (*See* Waugh Aff. ¶ 12, Jan. 27, 2011.) Finally, marijuana growing operations were discovered at two additional residences associated with both Summerville and Cressend. (*See* Waugh Aff. ¶ 11, Jan. 27, 2011.)

On January 25, 2008, Waugh signed an affidavit in support of an arrest warrant for Summerville that stated the following:

> On January 18, 2008, Pataskala PD received information form a confidential informant that there was an illegal indoor marijuana growing operation in the basement of a home located at 340 Cottage Grove Circle, Pataskala. The CI became suspicious after the defendant asked to put the electric bill in the CI's name and the bills were over $600.00 a month. Based on this information detectives obtained a search warrant. Upon entry into the home detectives

2

> immediately smelled a strong odor of marijuana. The home was very warm and humid inside. Detectives located in the basement a large-scale cultivation operation.
>
> Mature marijuana plants were found under full size grow lights. There were tubs containing liquid fertilizer, additional materials for patting, staking and growing the marijuana plants. The entire process was run off its own fuse box, which was installed in addition to the one for the home. Approximately 160 or more marijuana plants were recovered. The upstairs master bedroom contained scales, literature, and packaging materials.
>
> This case was brought to the Licking County Prosecutor's Office for review and a warrant was issued for the arrest of the defendant.

(Doc. 2-4.) On February 1, 2008, Waugh signed an identical affidavit in support of an arrest warrant for Cressend. (*See* Doc. 2-3.) Cressend's claims are based on the fact that the sentence "[t]he CI became suspicious after the defendant asked to put the electric bill in the CI's name and the bills were over $600.00 a month" is not accurate, as Summerville, not Cressend, was the one who asked Ritchie, the confidential informant, to place the bill in Ritchie's name. Accordingly, while the statement was accurate as to Summerville, it was clearly not accurate as to Cressend.

Waugh admits that the affidavit he signed in support of the arrest warrant for Cressend contains what he characterizes as a "typographical error." (Waugh Aff. ¶ 15, Jan. 27, 2011.) According to him, the affidavit was prepared by the Licking County Prosecutor's Office. (Waugh Aff. ¶ 15, Jan. 27, 2011.) He denies any involvement in deciding whether Cressend would be prosecuted. (Waugh Aff. ¶ 17, Jan. 27, 2011.)

Upon learning of the warrant for her arrest, Cressend surrendered to the police. (*See* Cressend Dep. at 102.) On September 3, 2009, the charges against Cressend were dismissed with prejudice. (*See* Doc. 2-7.)

Presently before the Court are the Parties' respective motions for summary judgment.

3

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

4

Here, the Parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on his or its own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 705 (5th Cir.1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248.

### III.

Cressend brings two claims: one for a false arrest under 42 U.S.C. § 1983, and a second for malicious prosecution under Ohio common law. For the following reasons, the court grants Waugh's motion for summary judgment as to the malicious prosecution claim, but denies both Waugh and Cressend's motions for summary judgment as to the false arrest claim.

### A.

The Court first considers Cressend's § 1983 claim. Section 1983 provides in pertinent part:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Cressend alleges that by including the inaccurate sentence in the affidavit used to obtain her arrest warrant, Waugh violated her Fourth Amendment rights. Waugh asserts a qualified immunity defense.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-part inquiry to determine whether a government official is entitled to qualified immunity. First, a court should determine whether the official's conduct violated a constitutional right. *Id.* at 201. Second, if a constitutional right was in fact violated, the court must determine if the right has been clearly established. *Id.*[1] The official is entitled to qualified immunity if no right has been violated or if the right itself is not clearly established. In the context of a summary judgment motion, the Court must determine if the plaintiff has produced evidence from which a reasonable jury could conclude that the official violated the plaintiff's constitutional right. *See Wilson v. Russo*, 212 F.3d 781, 786 (3rd Cir. 2000). Waugh does not contend that the Fourth Amendment rights at issue are not clearly established. As the Court concludes that a material issue of fact exists as to whether Waugh violated those rights, both Waugh and Cressend's summary judgment motions are denied as to Cressend's false arrest claim.

---

[1] The Supreme Court later held that the *Saucier* "procedure," i.e., that a court sequentially determine whether constitutional injury has occurred and then determine whether the right was clearly established, need not be viewed as an inflexible requirement. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

6

"An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). Here, the record is undisputed that Waugh signed the affidavit used to obtain the arrest warrant for Cressend, and that the sentence at issue was false. In this regard, Ritchie, the confidential informant, had been asked by Summerville and not Cressend to put the electric bill at the 340 Cottage Grove residence in Ritchie's name. However, to establish that her Fourth Amendment rights were violated by the falsehood and to overcome Waugh's entitlement to qualified immunity, Cressend must establish: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* (emphasis supplied).

Because the affidavit contains false information, that information must be set aside to determine if the affidavit still supports a finding of probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Here, the Court agrees with Cressend that if the false sentence is removed from the affidavit, there is not probable cause to support Cressend's arrest for cultivating marijuana. The sentence in question states that "[t]he CI became suspicious after the defendant asked to put the electric bill in the CI's name and the bills were over $600.00 a month." (Doc. 2-3.) The affidavit is captioned "State of Ohio v. Aimee L. Cressend." (Doc. 2-3.) Therefore, Cressend is "the defendant" referred to in the sentence. While the affidavit goes into relative detail describing the contraband discovered at the 340 Cottage Grove Circle residence, the sentence at

7

issue is the only sentence in the entire affidavit linking Cressend to that residence. Accordingly, if that sentence is removed, the affidavit lacks any information concerning Cressend's possible involvement with the marijuana growing operation that was discovered at the residence. Obviously, without being connected to the residence, probable cause that Cressend was cultivating marijuana at the residence is lacking.

The remaining issue, then, is whether Waugh made the false statement either knowingly or recklessly. "An assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson*, 212 F.3d at 788 (quotation omitted). However, negligence and innocent mistakes in the inclusion of information in an affidavit do not rise to the level of a Fourth Amendment violation. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978).

In the Court's view, a material issue of fact exists as to whether Waugh acted negligently or recklessly that must be resolved by a jury. In this regard, a jury could reasonably conclude that Waugh was simply negligent or made an honest mistake in the inclusion of the false statement. On the other hand, a jury could also reasonably conclude that the record, construed in favor of Cressend, supports a conclusion of recklessness on the part of Waugh. While Cressend lacks direct evidence of Waugh's state of mind, Waugh was admittedly aware of the fact that Cressend was not the individual who asked Ritchie to put the bill under Ritchie's name. Thus, given the other surrounding facts, including the fact the affidavit was identical to the affidavit used to obtain Summerville's arrest, a reasonable jury could infer that Waugh acted recklessly in failing to carefully review a document that, after all, was being submitted to obtain a warrant for an individual's arrest. The possible inference of recklessness is also supported by the fact that

8

the sentence at issue provides the only information in the affidavit tying Cressend to the drug activity discovered at the residence. Without the false information, the affidavit cannot support a finding of probable cause. Because the record in this case is sufficient to support a verdict for either side, summary judgment must be denied.

Waugh argues that information known to him not included in the affidavit, including that Cressend was seen at the residence, that Cressend and Summerville were connected to other marijuana growing operations, and that Cressend received mail at the residence, are enough to establish probable cause and defeat Cressend's Fourth Amendment claim. While the Court agrees that these facts arguably establish probable cause of Cressend's involvement with the growing operation, the source of Cressend's claim is the false information in the affidavit used to obtain her arrest warrant. Accordingly, while facts extrinsic to the affidavit known to Waugh at the time the affidavit was signed may be offered by Waugh at trial to negate the inference that he acted intentionally or recklessly, such facts may not be used as an absolute defense to Cressend's Fourth Amendment claim.

### B.

Cressend brings her claim for malicious prosecution under Ohio common law. Under Ohio law, "'[t]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in the favor of the accused.'" *Thacker v. City of Columbus*, 328 F.3d 244, 260–61 (6th Cir. 2003) (quoting *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)). To sustain an action for malicious prosecution, a plaintiff must show "that [the] defendant was the proximate and efficient cause of setting the law in motion, or tortiously continuing the prosecution." *Yeager v. Tomich*, 68 N.E.2d 110, 112 (Ohio Ct. App. 1945) (quotation omitted).

Although the charges against Cressend were resolved in her favor, she otherwise lacks evidence that indicates that it was Waugh's decision to investigate her or bring the charges against her. Accordingly, summary judgment is granted to Waugh on Cressend's malicious prosecution claim.

### IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED in PART**, and Plaintiff's Motion for Partial Summary Judgment (Doc. 45) is **DENIED**.

**IT IS SO ORDERED**

___8-26-2011___  
**DATED**

_____  
EDMUND A. SARGUS, JR.  
UNITED STATES DISTRICT JUDGE